UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

PAUL VERCEL,  )
    Plaintiff,  )
  )
    v.  )    CAUSE NO.: 2:15-CV-81-JEM
  )
CAROLYN W. COLVIN,  )
Acting Commissioner of the  )
Social Security Administration,  )
    Defendant.  )

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Paul Vercel on March 6, 2015, and an Opening Brief [DE 17], filed by Plaintiff on July 10, 2015. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On October 15, 2015, the Commissioner filed a response, and on November 2, 2015, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On May 12, 2008, Plaintiff filed an application for benefits alleging that he became disabled on July 5, 2006. Plaintiff's application was denied initially and upon reconsideration, a hearing was held with unfavorable findings, and the case was appealed to the District Court for the Northern District of Indiana. On March 25, 2013, the case was remanded, and the Appeals Council remanded the case. On September 17, 2013, Administrative Law Judge ("ALJ") David R. Bruce held another hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On November 4, 2013, the ALJ issued another decision finding that Plaintiff was not disabled.

In the November 4, 2013, opinion, the ALJ made the following findings under the required five-step analysis:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2. The claimant did not engaged in substantial gainful activity during the period from July 5, 2006, the alleged onset date, through his date last insured.

3. The claimant had the following severe impairments: degenerative disc disease of the back, tendinitis of the right shoulder, and degenerative joint disease of the left knee.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant, through the date last insured, had the residual functional capacity ("RFC") to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours of an 8 hour workday and sit for 6 hours of an 8 hour workday. He could occasionally reach overhead with his right upper extremity and could frequently reach in all other directions with his right upper extremity. He could never climb ladders/ropes/scaffolds and could occasionally climb ramps/stairs, balance, stoop, crouch, kneel, or crawl. He was to avoid all exposure to humidity and wetness, atmospheric conditions, weather, extreme cold, extreme heat, or vibration.

6. The claimant was unable to perform any past relevant work.

7. The claimant was 46 years old, which defined as a younger individual age 45-49, through March 14, 2010, after which he was defined as an individual closely approaching advanced age..

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled whether or not she has transferable job skills.

10. Considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, from July 5, 2006, the alleged onset date, through December 31, 2011, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

Plaintiff suffers from back, neck, and knee problems. On July 22, 2005, Plaintiff went to the emergency room after falling, and an x-ray of his lumbar spine showed degenerative changes in the L5-S1 region. Plaintiff saw an orthopedic surgeon in June, 2008, and x-rays of his shoulder revealed degenerative arthritis of the acromioclavicular joint with some spurring off of the inferior glenoid. A lumbar MRI in July 2008 showed degenerative disc changes at L5-S1 with disc bulging and central disc protrusion and disc bulging at other levels, as well as mild spinal stenosis at L4 and L5. In January 2011, Plaintiff was diagnosed with chronic impingement syndrome of both shoulders, and an MRI of the left shoulder showed degenerative chondral changes on the humeral head, posterior-superior glenoid labral tear, and biceps and supraspinatus tendinosis. Plaintiff also has dysthymia, has received some treatment for depression.

Plaintiff has sought treatment from chiropractor Gunnar Carlson since March 2000,

although his treatment has been somewhat sporadic. He completed a medical source statement and assessment of Plaintiff's ability to do work-related activities, reporting that Plaintiff could lift less than ten pounds, stand and walk for two hours in an eight-hour workday, and sit for four hours of an eight hour workday. He also noted Plaintiff's need to recline for more than two hours per day and to elevate his legs above his heart for at least two periods of at least half an hour.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial

evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

5

expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform

despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.     Credibility Assessment**

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the

7

claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 524. This language has been criticized by the Seventh Circuit Court of Appeals as "meaningless boilerplate" that "yields no clue to what weight the trier of fact gave the testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010); *see also Bjornson v. Astrue*, 671 F.3d 640, 645, 647 (7th Cir. 2012). The inclusion of this boilerplate language is not grounds for remand when the ALJ otherwise provides "reasons grounded in evidence" for his credibility finding. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). In this case, however, there are no such reasons grounded in evidence: most of the ALJ's opinion is statements of excerpts from the medical records and agency reports rather than a clear explanation of the weight given to them or given to Plaintiff's claims. There are a few statements that could be construed as commenting on Plaintiff's veracity, but even if generously

construed as credibility determinations, these statements leave much to be desired.

For example, the ALJ mentions that the medical evidence is sporadic and considers Plaintiff's treatment to be conservative. He writes that Plaintiff "appears to have sought treatment from various practitioners, possibly during periods of pain exacerbations, seeking each on one or two occasions." AR 524. However, he failed to note the repeated instances in the record and at the hearings where Plaintiff testified that he did not have insurance and could not afford additional medical or mental health treatment. *See Craft*, 539 F.3d at 679 ("Here, although the ALJ drew a negative inference as to [the plaintiff]'s credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that [the plaintiff] had reported an inability to pay for regular treatment and medicine."). An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-

9

7p).

The other mention the ALJ made that could generously be construed a credibility determination is also inadequately reasoned. The ALJ refers to Plaintiff's statements that he would have continued working, despite his impairments, if he had not been fired. Continuing to work after disability begins does not necessarily mean that a person is not disabled. As the Seventh Circuit has noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *see also Gentle*, 430 F.3d at 867 ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). Likewise, "[a] desperate person might force h[im]self to work – or . . . certify that []he is able to work – but that does not necessarily mean []he is not disabled." *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) (citing *Gentle*, 430 F.3d at 867; *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003)).

There are a number of errors in the ALJ's assessment of Plaintiff's credibility, such as it is, and on remand, the ALJ is directed to thoroughly explain his credibility assessment in accordance with the applicable regulations.

**B.      Residual Functional Capacity**

Plaintiff argues that the ALJ did not properly evaluate the medical opinions in the record and did not explain how the record supports the limitations in the RFC. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform

10

despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ again failed to properly consider the opinion of Plaintiff's treating chiropractor. The previous opinion from Magistrate Judge Andrew Rodovich remanded the ALJ's prior opinion, in part, for failure to "satisf[y] his duty to resolve the inconsistencies in the evidence of record," with a specific instruction to provide "further explanation of the inconsistencies between Dr. Carlson's opinion and the medical evidence of record." Plaintiff

argues that the ALJ again fails to describe even a single inconsistency.

The ALJ emphasized that Mr. Carlson is a chiropractor, not a medical consultant, and describes a number of reasons for discounting his opinions, including gaps in treatment and the fact that his description of treatment was made via checkbox form. However, as Plaintiff argues, the ALJ again failed to identify a single inconsistency between Mr. Carlson's medical source statements and the other medical evidence in the record. The Court does not dispute that a chiropractor is not an "acceptable medical source" whose opinion would be entitled to controlling weight, 20 C.F.R. §§ 404.1527, 416.927, but the ALJ is again reminded of his responsibility to consider "all relevant evidence in an individual's case record," including opinions "from medical sources who are not 'acceptable medical sources,'" SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006), and to apply the same criteria to determine the weight given their opinions as is applied to the opinions of "acceptable medical sources." *See Phillips v. Astrue*, 413 Fed. Appx. 878, 884 (7th Cir. 2010) ("In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)"). In this case, the ALJ failed to identify what weight Mr. Carlson's opinion was entitled to, and again failed to include in his analysis important factors such as the consistency of Mr. Carlson's opinion with the record as a whole, his specialty, the length of his treatment of Plaintiff, and his familiarity with Plaintiff's medical record. *See* 20 C.F.R. § 404.1527(c); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

The Court is also concerned with the ALJ's dismissal of an opinion from treating physician Dr. Pitchford that Plaintiff has a "permanent disability." The ALJ gave no weight to Dr. Pitchford's opinion because a finding of disability is reserved to the Commissioner and the

opinion does not include any narrative about the limits of Plaintiff's abilities. However, an an ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996). "While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'" *Hamilton*, 525 F. App'x at 439 (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *see also Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."). In this case, the ALJ did not describe the treating relationship or specialty of Dr. Pitchford and did not evaluate the consistency of Dr. Pitchford's statement with either his medical records or the record as a whole.

The ALJ also erred in his statements that "there are no opinions form either treating or examining medical sources." To the contrary, the record contains a number of medical records from other treating and examining physicians, several of them including indications of Plaintiff's specific limitations. Particularly notable is the report of state consultative examiner Dr. Smijkal, a report which the ALJ mentions earlier in his opinion. The report describes Plaintiff's limitations, including antalgic gait and inability to squat and limitations on the range of motion in his spine and knees. The Appeals Counsel even directed the ALJ to address the medical findings of the consultative examination physician and explain the weight given to his opinion. AR 679. Despite this direction, the ALJ failed to address the weight afforded to Dr. Smijkal's opinion or explain how it was consistent with the rest of the record. Instead, he appears to have completely

13

disregarded it. It is completely nonsensical for the ALJ to conclude that the only opinions in the record are from the state agency medical consultants, since they had to review *some* medical evidence in order to come up with even their conclusions. Furthermore, if somehow that were the case, the ALJ has the duty to ensure that the record is sufficiently complete and to obtain additional information, including new medical examinations, if needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)); *see also Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) ("[T]he ALJ in a Social Security hearing has a duty to develop a full and fair record," and "is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information.") (citing 20 C.F.R. §§ 416.912(d)-(f), 416.919, 416.927(c)(3)) (other citations omitted).

The ALJ's multiple errors in weighing the medical evidence leave the Court completely unable to trace his reasoning, and there is certainly no logical bridge from the evidence to his conclusions. This ALJ has twice failed to properly weighing the medical evidence in this case or follow the applicable agency regulations. The Court strongly recommends that the Agency appoint a different ALJ on remand, and that the new ALJ be directed to fully weigh the medical evidence in the record, explaining the weight given to each of the medical opinions, including their consistency with the rest of the record, and to fulfill his or her responsibility to develop the record, which may include ordering additional examinations or contacting medical sources to obtain records and evidence necessary to making the determination.

**D.     Remedy**

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. In this case, the ALJ again failed to properly weigh the medical evidence in the record, failed to draw a logical bridge from the evidence to his conclusions, and failed to properly assess Plaintiff's credibility. Additionally, although Plaintiff requests an award of benefits, he fails to present a developed argument in favor of doing so. Accordingly, this matter is remanded for further proceedings. However, because of the Agency's repeated failure to adequately address Plaintiff's claims, the Court warns that an any further failure to comply with these directives and the applicable regulations is likely to result in an award of benefits to Plaintiff. *See Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998) (remanding for benefits after repeated "obduracy evidenced by the action of the administrative agency on remand").

**CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Opening Brief [DE 17] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of March, 2016.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record